# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RAHMAN S. ABDULLAH,
JUAN M. PEREZ, and
SEAN TATE,

      Plaintiffs,

v.                                                       Case No. 04-C-1181

WISCONSIN DEPARTMENT OF
CORRECTIONS, et al.,

      Defendants,

## MEMORANDUM AND ORDER

On December 10, 2004, plaintiffs Rahman S. Abdullah, Juan M. Perez, and Sean Tate, all Wisconsin state prisoners, filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiffs subsequently filed an amended complaint on January 6, 2005. By order of May 20, 2005, plaintiffs were granted leave to file a second amended complaint. The second amended complaint was then filed on June 21, 2005. This matter comes before the court on plaintiffs' petition for leave to proceed in forma pauperis. In addition, plaintiffs have two motions currently pending before the court: (1) motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e); and (2) motion for preliminary injunction and temporary restraining order. All of these applications will be addressed herein.

## I. MOTIONS FOR LEAVE TO PROCEED IN FORMA PAUPERIS

Each plaintiff in a joint action is required to pay the statutory filing fee of $150.00. 28 U.S.C. § 1915(b)(1); Boriboune v. Berge, 391 F.3d 852, 856 (7th Cir. 2004).[1] If a prisoner does not have the money to pay the filing fee, he can request leave to proceed in forma pauperis. To proceed with an action in forma pauperis, the prisoner must complete a petition and affidavit to proceed in forma pauperis and return it to the court with a certified copy of the prisoner's trust account statement showing transactions for the prior six months. The court then assesses and, when funds exist, collects from the plaintiff at the time the action is filed an initial partial filing fee of 20% of the average monthly deposits to or the average monthly balance in the prisoner's trust account for the six-month period immediately preceding the filing of the complaint.

In this case, plaintiffs have filed certified copies of their prison trust account statements for the six-month period immediately preceding the filing of the complaint. Plaintiff Abdullah has been assessed and paid an initial partial filing fee of $10.53. Plaintiff Tate has been assessed and paid an initial partial filing fee of $ 44.13. Plaintiff Perez was assessed an initial partial filing fee of $18.90. On January 4, 2005, Perez paid the full $150.00 filing fee. However, the clerk's office erroneously refunded Perez $10.53. Therefore, at this time, Perez has paid $139.47 and he has a balance due for filing fees in the amount of $10.53. (See Docket, May 11, 2005 Financial Entry.)

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §

---

[1] The original complaint was filed on December 10, 2004, before the February 7, 2005, civil filing fee increase to $250.00.

2

1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327.

A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

To state a claim for relief under 42 U.S.C. § 1983, plaintiffs must allege: 1) that they were deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon them by a person acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiffs' pro se allegations, however inartfully pleaded, a liberal construction. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

3

Plaintiffs are practicing Sunni Muslims who are presently incarcerated in Wisconsin correctional facilities. (Second Am. Complaint, hereinafter referred to as "Complaint," at pp. 2-3.) Plaintiffs Abdullah and Tate are incarcerated at the Redgranite Correctional Institution (RGCI) and plaintiff Perez is incarcerated at the New Lisbon Correctional Institution (NLCI). In addition to the Wisconsin Department of Corrections (WDOC), the complaint names 31 other defendants. Defendant Matthew Frank is the current Secretary of the WDOC and defendant Jon Litscher was the Secretary of the WDOC at times relevant to many of the allegations in the complaint. Defendants Cindy O'Donnell and Richard Raemisch are deputy secretaries of the WDOC. Defendants John Ray and Sandra Hautamaki are complaint examiners with the Office of Audits, Investigations and Evaluations. Four of the defendants were, at all relevant times, employed by the WDOC/Division of Adult Institutions: Steve Casperson and Dick Verhagen are administrators; Laura Wood was the Policy Administrator; and Ana Boatwright is the Acting Policy Advisor.

Various wardens and deputy wardens are named as defendants: Phil Kingston is the Warden of Columbia Correctional Institution (CCI); Dan Bertrand is the Warden of Green Bay Correctional Institution (GBCI); Jeffrey Endicott is the Warden at RGCI; Daniel Benik was the Warden of CCI at times relevant to the complaint; and Greg Grams is the Deputy Warden of CCI. Also named as defendants are four inmate complaint examiners employed by the WDOC: Phil Noland (CCI), Amy Fischer (CCI), Wendy Bruns (GBCI), and Sally Wess (RGCI). Defendant Mardell Petras is the Program Services Coordinator at CCI. Five chaplains have been named as defendants: Gene Dawson (CCI), Larry Jackson (CCI), Larry Heitke (CCI), Michael Donovan (GBCI) and Ronald Beyah (Dodge Correctional Institution "DCI"). Kathy Limmons, a nurse employed by the WDOC, is also named as a defendant.

Two individuals who serve on the "Joint Committee for Review of Administrative Rules" are named as defendants as well: Judith Robson (Co-Chairperson) and Fred Risser (President). (Compl. at p. 5.) Finally, plaintiffs identify various "persons unknown" as defendants: "Office and Bureau Directors 1-10" (Compl. at p. 4); "Religious Practices Steering Committee members" (Compl. at p. 4.); and "John and Jane Doe's 1-10." (Compl. at p. 6.) The John and Jane Does are "employed at the Wisconsin Department of Corrections/Division of Adult Institutions." (Compl. at p. 6.)

Notwithstanding the court's admonition in its order of May 20, 2005, to adhere to the provisions of Rule 8, Federal Rules of Civil Procedure, which require that the complaint contain "a short and plain statement of the claim," plaintiffs filed a very lengthy second amended complaint. The factual allegations section of the pleading alone consists of 59 typed, single-spaced pages and 472 numbered paragraphs.

The complaint contains a "Preliminary Statement," which states, in part:

> This is a civil rights action for declaratory and injunctive relief, and damages for the deprivations of rights of Sunni Muslim inmates incarcerated within the [WDOC] . . . . The plaintiffs [sic] freedom to practice their religion has been substantially burdened in being subjected to discrimination that is unwarranted by being denied legitimate religious practices and property, which are not inconsistent with their orderly confinement, the security of the Institutions(s) and fiscal limitations. . . .
>
> Defendant Frank and his employees stated herein have willfully and intentionally sought to deprive the plaintiffs of services, immunities, privileges and the free exercise and enjoyment of rights protected by the U.S. Constitution under the 1st and 14th Amendments and the Religious [L]and Use and Institutionalized Persons Act of 2000 . . . .
>
> Defendant Frank and his employees stated herein have failed to act in accordance with their own rules, policies and procedures as set forth in the Wisconsin Administrative Code . . . . In doing the aforesaid, the defendants sought to circumvent their own rules and policies governing religious practices/property . . . and intentionally and repeatedly turned a blind eye to

5

> the violation of plaintiffs' civil/constitutional rights, by failing to properly investigate complaints submitted to the [Inmate Complaint Review System], thereby not providing plaintiffs with an adequate remedy that will give voice to legitimate grievances.
>
> Defendants stated herein have sought to deny plaintiff's [sic] access to the courts, by willfully and intentionally denying them services privileges and immunities (i.e. use of typewriters, computer, and copying machine) . . . in order to prevent them to [sic] adequately and effectively litigate their case pending before the State and federal courts, while allowing other inmates use, violates plaintiffs' civil/constitutional rights under the 1st and 14th Amendments to the U.S. Constitution.

(Compl. at pp. 6-7.)

As a preliminary matter, I note that plaintiffs have named the WDOC as a defendant. State agencies, including the WDOC are not "persons" or suable entities under §1983. See Ryan v. Illinios Dep't of Children and Family Services, 185 F.3d 751, 758 (7th Cir. 1999) (holding that state agency was not a "person" under §1983). Thus, defendant WDOC will be dismissed from this action.

### A. First Amendment and RLUIPA Claims (Compl. at ¶¶ 473-505)

Plaintiffs allege that defendants violated their rights under the First Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §2000cc. Specifically, the complaint alleges that defendants denied plaintiffs' requests for various religious articles and religious practices which are essential to the exercise of their Sunni Muslim faith. Requested items which were denied include prayer oil, non-pork soap, a turban/scarf, a silver ring bearing the name of Allah, a "Thwab (long shirt/robe," a "Miswak (toothstick)" and "Khuffs/Khuffayn (Leather socks)." (Compl. at ¶¶ 119, 476, 477, 483, 488, 493.) Further, plaintiffs allege that defendants denied their requests for "special food for religious observance" and their requests to receive

6

a religious diet. (Compl. at ¶¶ 479-480, 486-487, 493.) Finally, plaintiffs assert that their requests to hold a "separate umbrella congregate service/study group from rival Islamic sect (i.e. Nation of Islam), and inmate led congregate/study group[s]" were also improperly denied. (Compl. at ¶ 481.) Plaintiffs contend that these religious articles and practices are central to receiving the blessings of their faith and "entering Heaven in the Afterlife." (Compl. at ¶ 462.)

In addition, the complaint contains allegations that defendants ran afoul of the First Amendment and RLUIPA insofar as they "maintained and enforced a policy/custom and practice of denying the plaintiffs . . . [their] religious practices/property requested in accordance with their faith" and "maintain[ed] a custom/policy and practice . . . to improperly process plaintiffs [sic] DOC-2075 forms . . . ." (Compl. at ¶¶ 499-505.) Plaintiff Tate also avers that his rights were infringed when defendant Limmons, a nurse with the WDOC, "denied him a reasonable alternative to a TB test and instead subjected him against his will with a substance (PPD) containing pork." (Compl. at ¶ 491.)

With respect to their First Amendment claim, plaintiffs do not explicitly state whether their claim is one under the Free Exercise Clause, the Establishment Clause or both. The preliminary statement portion of the complaint states that the defendants "willfully and intentionally sought to deprive the plaintiffs of services, immunities, privileges, and the free exercise and enjoyment of rights protected by the U.S. Constitution under the 1st . . . Amendment[] . . . ." (Compl. at p. 6.) I will interpret this statement as one alleging a violation of plaintiffs' rights under the Free Exercise Clause of the First Amendment. However, even a liberal construction of their complaint fails to yield any allegations which suggest that plaintiffs are advancing a claim under the Establishment Clause of the First Amendment.

7

The standards for stating a claim under the Free Exercise Clause and RLUIPA are essentially the same. The Free Exercise Clause protects a prisoner's right to practice his religion as long as doing so does not unduly burden the institution. Richards v. White, 957 F.2d 471, 474 (7th Cir. 1992). Thus, to prevail under the Free Exercise Clause, a plaintiff must show that a central religious belief or practice was substantially burdened. Kaufman v. McCaughtry, 419 F.3d 678, 683 (7th Cir. 2005) (citing Hernandez v. Comm'n of Internal Revenue, 490 U.S. 680, 699 (1989)). Under RLUIPA, prisons that receive federal funding are prohibited from burdening a prisoner's exercise of religion substantially unless the prison has a compelling interest and employs the least restrictive means possible for protecting that interest. Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003). Because the Wisconsin prison system receives federal funding, a prisoner need only allege that the prison has substantially burdened a religious belief in order to state a claim under RLUIPA. Id.

Accepting the aforementioned allegations of the complaint as true, I find that the plaintiffs have stated a claim for relief under the Free Exercise Clause and RLUIPA.

**B.    Equal Protection Claim (Compl. at ¶¶ 516 - 522)**

Plaintiffs also launch a claim of discrimination in violation of the guarantees afforded them under the Fourteenth Amendment to the United States Constitution. In particular, plaintiffs contend that requests made by Jewish inmates (Compl. at ¶ 271) and Native Americans (Compl. at ¶ 273) for religious items similar to those requested by plaintiffs were granted while plaintiffs' requests were denied. They also complain that "faiths such as Judaism, Hindu, Sikh, Buddhism, Catholicism, and 'others' are accommodated with a

8

religious diet in accordance with their faith, and receive special foods and symbolic foods on religious holidays, which the plaintiffs have been denied repeatedly." (Compl. at ¶ 280.) Plaintiffs further allege that the Christian denominations throughout the WDOC are receiving preferential treatment with respect to the distribution of "time, space, and resources" such as in the number of allowable bible study sessions (Compl. at ¶ 304), congregate services (Compl. at ¶ 305), choir practices (Compl. at ¶ 306), and inmate led congregate and study services (Compl. at ¶ 313).

The Equal Protection Clause of the Fourteenth Amendment requires inmates to be treated equally; however, a prison regulation that treats inmates unequally will be upheld if it is reasonable in light of legitimate penological interests. May v. Sheahan, 226 F.3d 876, 882 (7th Cir. 2000). Accepting plaintiffs' allegations as true, I find that plaintiffs have stated a claim of unequal treatment under the Fourteenth Amendment.

**C.     Access to the Courts (Compl. at ¶¶ 401-436 and 540-542)**

Plaintiffs allege that, on March 21, 2005, defendant Casperson, the Administrator of the WDOC/Division of Adult Institution, implemented "revised DOC 309 IMP 29" which prohibits plaintiffs from making photocopies of any documents that could be duplicated by hand or typewriter. (Compl. at ¶ 401.) Pursuant to the revised policy, the requests of plaintiffs Abdullah and Tate for photocopying privileges have been denied. Plaintiffs also assert that the law library at the RGCI where they are incarcerated is equipped with only one typewriter and the computers are not available to non-indigent prisoners such as themselves. Including the instant lawsuit, plaintiffs Abdullah and Tate presently have three legal actions pending. They argue that "having to hand duplicate and/or retype their legal

briefs and any . . . accompanying documents for [their pending] actions would prove to be a hardship and difficulty due." (Compl. at ¶425.)

Prisoners have a constitutional right of access to the courts and must be given a reasonably adequate opportunity to present their claims. Bounds v. Smith, 430 U.S. 817, 825 (1977); Davis v. Milwaukee County, 225 F. Supp. 2d 967, 971-72 (E.D. Wis. 2002). In order to state an access to courts claim "a prisoner must make specific allegations as to the prejudice suffered because of the defendants' alleged conduct." Ortloff v. United States, 335 F.3d 652, 656 (7th Cir. 2003). A plaintiff must plead actual injury to state a claim, such as by alleging that deadlines were missed, filings were untimely or that legitimate claims were dismissed because of the denial of reasonable access to legal resources. Id.

Here, plaintiffs have done nothing more than allege that the restrictions on photocopying legal material create a hardship. Because they have not alleged any actual injury, their access to courts claim must fail.

**D.     Personal Involvement**

In order to state a claim for monetary relief under 42 U.S.C. § 1983 against a party, plaintiffs must allege some personal participation or involvement by that party in the alleged constitutional violation. See Duckworth v. Franzen, 780 F.2d 645 (7th Cir. 1985). To establish liability under § 1983, plaintiffs must therefore allege that a defendant was in some way personally involved in the alleged deprivations, and that the deprivations occurred with the knowledge and consent of that defendant. See Smith v. Rowe, 761 F.2d 360 (7th Cir. 1985). At the in forma pauperis stage, this personal involvement may either be stated specifically in the complaint or inferred from the surrounding circumstances. See Williams

10

v. Faulkner, 837 F.2d 304 (7th Cir. 1988), aff'd sub nom. Neitzke v. Williams, 490 U.S. 319 (1989). Prison officials cannot be held liable under a theory of respondeat superior in claims under §1983. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). However, where injunctive relief, as opposed to monetary relief is sought, "no 'direct and personal' involvement is required in order to hold high-level officials responsible for the actions of subordinates and to subject them to the equitable jurisdiction of the court." Ogden v. United States, 758 F.2d 1168, 1177 (7th Cir. 1985).

In this case, plaintiffs seek both monetary relief and injunctive relief against the named defendants. However, the complaint fails to contain any allegations against the following defendants: Office and Bureau Directors 1-10, Fred Risser, Judith Robson and Religious Steering Committee Members. Thus, the claims seeking monetary relief against these defendants will be dismissed. These individuals will be retained, however, as defendants in their official capacities for purposes of injunctive relief.

**E.     Summary**

For the reasons stated above, plaintiffs' request to proceed in forma pauperis will be granted. The claims against the WDOC and the access to courts claim will be dismissed. Further, the claims seeking monetary relief under 42 U.S.C. § 1983 against defendants Office and Bureau Directors 1-10, Fred Risser, Judith Robson and Religious Steering Committee Members will be dismissed.

**II.  MOTION FOR PRELIMINARY INJUNCTION
AND TEMPORARY RESTRAINING ORDER**

In a motion filed on July 11, 2005, plaintiffs seek a "preliminary injunction and temporary restraining order" to halt the enforcement of DOC 309 IMP 29 which prohibits

plaintiffs from photocopying any and all legal materials that cannot be handcopied. This is the same prison regulation discussed previously in this order in connection with plaintiffs' access to courts claim.

The standards for a temporary restraining order and preliminary injunction are identical. The applicant has the burden of showing: (1) a reasonable likelihood of success on the merits, (2) no adequate remedy at law, and (3) irreparable harm if injunctive relief is denied. Graham v. Med. Mut. of Ohio, 130 F.3d 293, 295 (7th Cir. 1997). If the petitioner satisfies the initial three-step burden, the court must balance the irreparable harm to the nonmoving party if the injunction is granted against the irreparable harm to the moving party if the injunction is denied. Id. The court also must consider the effect of the injunction on nonparties. Id.

Plaintiffs have not established a basis for injunctive relief in this case because they are unable to show that they have a reasonable likelihood of succeeding on the merits of their claim that the enforcement of DOC 309 IMP 29 violates their constitutional rights. I have already determined that plaintiffs' access to courts claim stemming from the application of DOC 309 IMP 29 fails to state a claim because plaintiffs have not satisfied the actual injury requirement for such a claim. As stated herein, that claim will be dismissed. Their most recent motion and supporting documentation also fails to establish actual injury as a result of defendants' conduct. At best, plaintiffs allege that their pending legal actions could possibly be hampered by the continued application of DOC 309 IMP 29 and that the regulation is a physical hardship. (Decl. of Rahman Abdullah and Sean Tate for Preliminary Injunction and Temporary Restraining Order at ¶¶ 33-38.) Having already determined that

this claim is without merit, plaintiffs' motion for a temporary restraining order and preliminary injunction will be denied.

### III. MOTION TO ALTER OR AMEND JUDGMENT

On June 2, 2005, plaintiffs filed a motion to alter or amend the court's May 20, 2005, order pursuant to Rule 59(e), Federal Rules of Civil Procedure. In the May 20, 2005, order, I denied plaintiffs' first motion for a preliminary injunction and temporary restraining order and their motion for the appointment of counsel.

Plaintiffs have brought the motion for reconsideration under Rule 59(e), Federal Rules of Civil Procedure, which relates to altering or amending judgments. No judgment was entered in this case. Plaintiffs' motion is more properly one for reconsideration under Federal Rule of Civil Procedure 54(b), which allows any order adjudicating fewer than all the claims to be revised at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. Motions to reconsider (or more formally, to revise) an order under Rule 54(b) are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e): to correct manifest errors of law or fact or to present newly discovered evidence. Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir. 1987) (quoting Keene Corp. v. Int'l Fid. Ins. Co., 561 F. Supp. 656, 665-66 (N.D. Ill. 1982), aff'd, 736 F.2d 388 (7th Cir. 1984) (citation and footnote omitted)), amended by, 835 F.2d 710 (7th Cir. 1987); compare Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996) (providing nearly identical standard for motion under Rule 59(e)).

The May 20, 2005, order denied plaintiffs' motion for a preliminary injunction and temporary restraining order which was contained within the body of the original complaint.

13

The basis for denying the motion was my finding that plaintiffs had not established that they lacked an adequate remedy at law or that they would suffer irreparble harm if the injunctive relief was not granted. (May 20, 2005, Order at p. 3.) In their motion for reconsideration, plaintiffs disagree with my conclusion and argue that I did not consider the documents filed by them in support of their motion. This argument is merely an attempt to relitigate matters previously decided. Plaintiffs have not presented any newly discovered evidence nor have they shown that the portion of the May 20, 2005, order denying this motion for injunctive relief contained a manifest error of law. Plaintiffs also ask me to reconsider the denial of their motion for the appointment of counsel but advance no argument warranting such relief. For these reasons, the motion for reconsideration will be denied.

## IV.  CONCLUSION

**For the foregoing reasons,**

**IT IS THEREFORE ORDERED** that plaintiffs' request to proceed in forma pauperis will be **GRANTED**.

**IT IS FURTHER ORDERED** that defendant Wisconsin Department of Corrections is **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that plaintiffs' access to courts claim is **DISMISSED**.

**IT IS FURTHER ORDERED** that plaintiffs' claims for monetary relief under 42 U.S.C. § 1983 against defendants Office and Bureau Directors 1-10, Fred Risser, Judith Robson and Religious Steering Committee Members are **DISMISSED**.

**IT IS FURTHER ORDERED** that plaintiffs' motion for preliminary injunction and temporary restraining order (Docket #34) is **DENIED**.

14

**IT IS FURTHER ORDERED** that plaintiffs' motion to alter or amend the judgment (Docket # 31) is **DENIED**.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint, the summons, and this order upon defendants pursuant to Federal Rule of Civil Procedure 4.

**IT IS ALSO ORDERED** that defendants shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect the $139.47 balance of the filing fee from plaintiff Abdullah's prison trust account, the $105.87 balance of the filing fee from plaintiff Tate's account and the $10.53 balance of the filing fee from plaintiff Perez's account by collecting monthly payments from the plaintiffs' respective prison trust accounts in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ALSO ORDERED** that copies of this order be sent to the wardens of the institutions where the inmates are confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin 53707-7857.

Plaintiff are hereby notified they are required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P.

15

Case 2:04-cv-01181-LA   Filed 11/02/05   Page 15 of 17   Document 39

5(a). Plaintiffs should also retain a personal copy of each document. If plaintiffs do not have access to a photocopy machine, plaintiff may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

Plaintiffs are further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 2 day of November, 2005.

/s_____
LYNN ADELMAN
District Judge

17