# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RAHMAN S. ABDULLAH,
JUAN M. PEREZ and
SEAN TATE,
        Plaintiffs,

v.                                       Case No. 04C1181

MATTHEW FRANK, et al.,
        Defendants.

## MEMORANDUM AND ORDER

Plaintiffs, all Wisconsin state prisoners, bring this pro se action pursuant to 42 U.S.C. § 1983. By order of November 2, 2005, I screened plaintiffs' complaint and granted their petitions for leave to proceed in forma pauperis in connection with their claims under the Free Exercise Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc. Presently before me is plaintiffs' Motion for Summary Judgment[1] and Motion to Accept Plaintiffs' Reply Brief As Timely Filed.

---

[1] As filed, plaintiffs' motion is captioned "Motion for Summary Judgment and for an Order Denying the Defendants['] Motion for Summary Judgment." However, defendants have not filed a motion for summary judgment. Thus, I will refer to plaintiffs' motion as simply plaintiffs' motion for summary judgment.
    In their brief in support of their motion for summary judgment, plaintiffs assert that they are entitled to summary judgment on a Due Process claim in addition to the claims on which I permitted them to proceed in forma pauperis. I need not address this claim as plaintiffs have not been allowed to proceed on a due process claim and, to the extent that it alleges a violation of state law, I have not exercised supplemental jurisdiction over such a claim.

## I. BACKGROUND FACTS

Plaintiffs are Sunni Muslims who claim to be sincere in their religious beliefs, adhere strictly to the Qur'an, Hadeeth and follow the Sunnah of Prophet Muhammad.[2]

Defendant Matthew Frank is the current Secretary of the Wisconsin Department of Corrections (DOC). Defendant Jon Litscher was the Secretary of the DOC at times relevant to many of the allegations in the complaint. Defendants Cindy O'Donnell and Richard Raemisch were, at all relevant times, employed as deputy secretaries of the DOC. Defendants John Ray and Sandra Hautamaki are Corrections Complaint Examiners with the DOC. Four defendants were, at all relevant times, employed by the DOC/Division of Adult Institutions: Steve Casperson and Dick Verhagen as administrators; Laura Wood as Policy Advisor; and Ana Boatwright as Acting Policy Advisor. Various wardens are also named as defendants: Phil Kingston and Daniel Benik, wardens of Columbia Correctional Institution (CCI); Dan Bertrand, warden of Green Bay Correctional Institution (GBCI); Jeffrey Endicott, warden of Redgranite Correctional Institution (RGCI); and Greg Grams, CCI Deputy Warden. Also named as defendants are four individuals who were, at all relevant times, employed by the DOC as inmate complaint examiners: Phil Noland (CCI), Amy Fischer (CCI), Wendy Bruns (GBCI) and Sally Wess (RGCI). Five chaplains have been named as defendants: Gene Dawson (CCI), Larry Jackson (CCI), Larry Heitke (CCI), Michael Donovan

---

[2] Plaintiffs assert that the definition of the word Sunnah is "'an act which is between obligatory and permissible and for which one is rewarded for and not punished for not performing.'" (Declaration of Plaintiffs in Support of Summary Judgment ¶ 47 [Decl. of Pls.].) Defendants state that in the Arabic language, Sunnah means "a way or method which can have two states, either a good Sunnah or bad Sunnah." (DPFOF ¶ 22 n.1.) According to the defendants, when Muslims refer to Sunnah, they are referring to the way of Prophet Muhammad and his companions. (Id.)

2

(GBCI) and Ronald Beyah (Dodge Correctional Institution [DCI]).  Two individuals who, at all pertinent times, served on the "Joint Committee for Review of Administrative Rules" are named as defendants: Judith Robson (co-chairperson) and Fred Risser (president).  Finally, defendant Mardell Petras was the CCI Program Services Coordinator and Kathy Lemens was the GBCI nurse.

Plaintiffs challenge the denial of various requests for religious property.  Wisconsin inmates may petition for new religious practices, property or activities that are not offered at their institution by submitting a "Request for New Religious Practices" (RFNRP).  Plaintiff Abdullah submitted an RFNRP for prayer oil, Halal (non-pork) soap, a turban/Kifiyyan (scarf) and silver, contending that in adhering to the Sunnah of the Prophet Muhammad, he is required to have such items.  Defendants Dawson, Beyah, Petras, Kingston, Wood, Ray, O'Donnell, Casperson and Litscher denied plaintiffs' RFNRPs based on the opinion of defendant Beyah that the requested items were not essential for practicing his religion.  Plaintiff Abdullah also submitted a RFNRP in which he sought permission to have a white Kufi and Thawb (prayer robe/long shirt) to wear during Jumu'ah Prayer and Prayer services, contending that there is religious authority requiring him to possess such items.  Defendants Heitke, Petras, Kingston, Wood, Ray, O'Donnell and Litscher again denied this RFNRP based upon the opinion of defendant Beyah that the requested items were not essential for practicing his religion.

Plaintiff Perez filed five RFNRPs in which he sought to possess the following items: (1) turban/Kifiyyah; (2) prayer oil; (3) Thawb (prayer robe); (4) Miswak; and (5) Khuffs (leather socks).  Plaintiffs assert that religious authority obligates them to have such items. Defendants Heitke, Petras, Beyah, Kingston, O'Donnell and Litscher denied Perez's RFNRP

3

on the ground that the requested items were not essential. In addition, they denied the RFNRP with respect to the prayer robe because inmates are required to wear their institutional clothing.

Plaintiff Tate submitted three RFNRPs in which he sought to possess the following items: (1) turban/Kifiyyah; (2) Thawb; and (3) silver ring. While plaintiff Tate claimed that the property he was requesting was central to the practice of Islam in the Sunni tradition, defendants Donovan, Beyah, Bertrand and Wood denied his requests based on the opinion of defendant Beyah that the requested items were not essential for practicing his religion. Tate filed a grievance with respect to these denials, which was rejected.

Plaintiffs also challenge denials of requests to practice a religious diet. Abdullah and Tate submitted requests for a religious diet containing meat that has been slaughtered in accordance with Islamic dietary law and for eating utensils other than those issued for regular meals. Plaintiffs assert that the requested diet and utensils are required by their Islamic faith. The requests were denied. In addition, Abdullah submitted a RFNRP to allow himself and other Sunni Muslim inmates to pool up to $300 for the purpose of purchasing Halal and traditional food items for an 'Eid Feast. Defendant Petras denied this request by memorandum in which she stated:

> Religious feasts will consist of the regular institution meals or special religious diet meals prepared by the institution. For health, safety and institution security reasons all food will be prepared by the institution. No outside food may be brought into the institution.

(Amended Complaint [Am. Compl.], Ex. L-95.) Defendant Jackson denied the request for the same reasons and because the request was "not a new religious practice or activity . . . ." (Am. Compl. Ex. L-98.) Further, Abdullah filed a grievance contesting the

4

procedure limiting Sunni Muslims to celebrate only one of their two 'Eid feasts. Defendant Fischer rejected such grievance and defendants Ray, O'Donnell and Litscher affirmed the rejection. Plaintiffs contend that other non-Muslim inmates were allowed to purchase holiday food items from outside pre-approved vendors. Plaintiffs further contend that defendants serve a traditional Thanksgiving meal and extra-menu items appear on Christmas, New Year and Easter.

Plaintiffs also challenge the nature of religious services offered to them. They state that defendants Litscher and Casperson combined all Muslim sects into one group for the purpose of congregation and study services. Abdullah submitted a RFNRP to defendant Jackson asking for Sunni Muslims to be allowed to have separate religious services apart from the Nation of Islam, given Abdullah's belief that his faith required separate services. Defendant Jackson denied his request and such denial was affirmed by defendants Petras, Grams, Kingston, Wood, Ray, Verhagen, Casperson, O'Donnell and Litscher. In addition, Abdullah submitted a RFNRP to Jackson seeking permission for Sunni Muslim inmates to be allowed to conduct inmate led congregate and study services. This request was denied on the ground that the DOC does not allow an inmate to lead studies or services, and such denial was affirmed by defendants Petras, Grams, Kingston, Wood, Ray, Verhagen, Casperson, O'Donnell and Litscher.

Finally, Tate contends that defendant Lemens forcefully injected him with a pork-based TB skin test contrary to his religious beliefs. Tate filed an inmate complaint claiming that Lemens should have permitted a chest x-ray as an alternative to the skin test. Defendant Bruns recommended that the complaint be dismissed because the "offender had the choice of submitting to the TB test or being isolated for medical monitoring, and chose

5

to take the skin test." (Am. Compl. Ex. Z-336.) Defendant Bertrand accepted the recommendation and ordered that the complaint be dismissed. Defendants Hautamaki, O'Donnell and Litscher affirmed the dismissal.

Defendants contend that defendant Beyah, an Islamic faith chaplain at DCI, has studied the Qur'an and other Islamic texts extensively and disputes plaintiffs' contention that their requests were necessary to the practice of Istam. They have submitted an affidavit from Beyah stating as much.

Beyah avers that there is nothing in the Qur'an that requires, recommends or suggests the use of candles, incense and oil as a part of Islamic prayer. He states that there is no such thing as prayer oil in the Islamic religion. He further states that the use of candles during prayer or to create or perform a religious ritual would be un-Islamic. He states that a Muslim may permissibly burn incense, but there is nothing in the Islamic religion to require or recommend the burning of incense. Further, Beyah avers that the Qur'an does not require, recommend or suggest that the use of any sort of smoke sacrament during prayer or worship and knows of no requirement in Islam that Muslims wear any jewelry or talisman. As to dress, Beyah avers that Islam only requires that a man cover himself at least from the navel to the knees. Beyah attests that while some Muslim men wear a small head covering, called a Kufi, there is nothing in the Qur'an, Sunnah or Islamic Shariah that requires a man to wear a Kufi. Beyah further opines that the Qur'an does not require Sunni Muslims to wear a turban/Kifiyyah, silver ring, Thawbun, white Kufi or Khuffs, and that it is not a substantial burden on one's faith not to wear these items.[3] Additionally,

---

[3]In his affidavit, Beyah defines the phrase "substantial burden" as "something that forces adherents of a religion to refrain from religiously motivated conduct, inhibits or

6

Beyah states that there is nothing in the Qur'an that requires Sunni Muslims to use Miswak nor is it a substantial burden on one's faith not to use it.

Turning to food, defendants state that the Qur'an prohibits the consumption of alcohol, pork and pork by-products; that practicing Muslims maintain certain dietary standards called "Halal"; and that the highest form of Halal is Dhabiha – slaughter by severing the neck of a permissible animal and mentioning God's name. According to the testimony of Beyah, under Islamic law, there is no prohibition against preparing, cooking, serving, or eating Halal food using pots, pans, dishes, or utensils that have in the past been used to prepare, cook, serve, or eat food which contained pork or pork by-products so long as the utensils have been cleaned thoroughly. Further, Beyah avers that if a Muslim is confined in prison, he may eat meat that he does not know to be Dhabiha, as long as the meat is not pork or certain other classes of food. Additionally, Beyah avers that a Muslim can eat only vegetarian foods without violating any tenet of Islam.

As to worship, Beyah avers that plaintiffs are not substantially burdened by DOC policies that limit them to one religious feast per year, deny them feasts on 'Eid-ul-Fitr and 'Eid-ul-Adha, deny them religious services separate from the Nation of Islam, deny them inmate-led congregate and study groups, and deny them Halal/Dhabiha food from outside sources.

Finally, defendant Lemens sumitted an affidavit stating that, as an alternative to injection with a pork-based TB test, Tate was given the option of being monitored by Health

---

constrains conduct or expression that manifests a central tenet of a person's religious beliefs, or compels conduct or expression that is contrary to those beliefs." (Beyah Aff. ¶ 29.)

7

Services staff in a housing placement that meets the safety needs of the rest of the institution, but he did not take that option. She further states that a chest x-ray is only an option in lieu of the TB test if so ordered by a physician. Finally, she states that she did not forcefully inject plaintiff Tate with any TB skin test.

## II.  MOTION TO ACCEPT REPLY BRIEF

Plaintiffs ask me to accept their reply brief in connection with their motion for summary judgment as timely filed notwithstanding the fact that it was filed on December 6, 2006, which was after the November 29, 2006, deadline to file such brief. As there was no objection by the defendants to the late filing of the reply brief and the defendants have not filed an objection to the instant motion, I will grant plaintiffs' request to accept their reply brief as timely filed.

## III.  MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standard

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id. For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." Id.

8

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment. Anderson, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. Id. at 248. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. Id. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. Id.

The party moving for summary judgment bears the initial burden of demonstrating that it is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 323. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. Id. at 322-23. Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248, or upon conclusory statements in affidavits, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989). In considering a motion for summary judgment, the court may consider any materials that would be admissible or usable at trial, including properly authenticated and admissible documents. Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000).

An affidavit submitted to support or oppose a summary judgment motion must be based on personal knowledge, must set forth facts that would be admissible at time of trial, and must establish the affiant's competence to testify. Fed. R. Civ. P. 56(e). Affidavits based on "information and belief" - facts that the affiant believes are true, but which the

9

affiant does not know are true - are not proper. Toro Co. v. Krouse, Kern & Co., Inc., 827 F.2d 155, 162-63 (7th Cir. 1987); see also Friedel v. City of Madison, 832 F.2d 965, 970 (7th Cir. 1987) (stating that a court should disregard an affidavit that does not comply with the requirements of 56(e)).

**B. Analysis**

   **1. First Amendment and RLUIPA Claims**

The First Amendment's free exercise clause protects an inmate's right to exercise his religious beliefs in prison. Tarpley v. Allen County, Indiana 312 F.3d 895, 898 (7th Cir. 2002). However, lawful incarceration "brings about the necessary withdrawal or limitation of many prvileges and rights, a retraction justified by the considerations underlying our penal system." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). Thus, a prison regulation that impinges on an inmate's constitutional rights will be considered valid "if it is reasonably related to legitimate penological interests." O'Lone, 482 U.S. at 349 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). "In the context of the Free Exercise Clause, the plaintiff must first establish that his right to practice his religion was burdened in a significant way." Kaufman v. McCaughtry, 419 F.3d 678, 683 (7th Cir. 2005) (citing Hernandez v. Comm'n of Internal Revenue, 490 U.S. 680, 699 (1989)).

The RLUIPA guarantees prisoners greater freedom to engage in religious conduct than does the First Amendment. See Charles v. Verhagen, 220 F. Supp. 2d 937, 943 (W.D. Wis. 2002). The Act prohibits governmental imposition of a "substantial burden on the religious exercise" of an inmate, unless the defendant can show that the burden is: (1) in furtherance of a compelling governmental interest; and (2) is the least restrictive means of

10

furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1(a). <u>Lindell v. McCallum</u>, 352 F.3d 1107, 1109-10 (7th Cir. 2003). The protections afforded by the Act apply where,

> (1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or
>
> (2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes.

42 U.S.C. § 2000cc-1(b). Because the DOC receives and uses federal grant money for state prison facilities, the requirements of the RLUIPA apply to it. <u>Charles v. Verhagen</u>, 348 F.3d 601, 606 (7th Cir. 2003)).

To show that their rights under RLUIPA were violated, plaintiffs must first establish that their religious beliefs are sincerely held, <u>see</u> <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 725 n.13 (2005), and that defendants' actions created a substantial burden on the exercise of their religious beliefs. 42 U.S.C. § 2000cc-2(b); <u>Hernandez</u>, 490 U.S. 680.[4] While RLUIPA does not define the term "substantial burden," the Seventh Circuit has held that a substantial burden is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise...effectively impracticable." <u>Civil Liberties for Urban Believers v. City of Chi.</u>, 342 F.3d 752, 761 (7th Cir. 2003).

---

[4]Plaintiffs erroneously assert that they must only show that their religious beliefs are sincere. However, the sincerity of one's religious beliefs is a separate inquiry from whether those beliefs have been substantially burdened. <u>See, e.g.</u>, <u>Kaufman</u>, 419 F.3d at 681-683 (recognizing that defendants did not dispute that inmate's atheist beliefs were "sincerely held," but granted summary judgment for the defendants because plaintiff failed to present evidence showing a "substantial burden" on those beliefs).

11

### a. Claims Relating to Religious Property and Religious Practices

Though defendants do not question whether plaintiffs' beliefs are sincerely held, they assert that there is a question of fact as to whether they have substantially burdened plaintiffs' practice of religion. I agree.

Plaintiffs have presented their own testimony asserting that the denials of religious property and religious practices significantly burdened the practice of their religion because the requests involved matters that were important to their faith. For example, plaintiffs declare that, in adherence to the "Sunnah of the Prophet Muhammad . . . ," they are required to wear a Turban/Kifiyyah as a religious headdress, a Silver Ring on their little finger, the Thawb (prayer robe) and prayer oil. (Pls.' Decl. ¶¶ 50, 53, 57 and 58.) In addition, they declare that the denial of inmate-led study groups burdens the practice of their religion because "it is obligatory for Muslims who possess knowledge pertaining to the religion of Islam to teach it to those who do not possess the necessary knowledge." (Pls.' Decl. ¶ 88.) Plaintiffs also declare that it is "obligatory for Muslims to observe both 'Eid-ul-Adha (i.e., the feast of sacrifice, the great feast) and 'Eid-ul-Fitr (i.e., the feast of breaking fast). (Pls.' Decl. ¶ 94.)

In response, defendants presented the expert testimony of Beyah, calling into question plaintiffs' assertions. If accepted as true, Beyah's testimony would support a finding that plaintiffs are able to practice their Sunni Muslim faith effectively without the requested religious property or the additional religious practices like an inmate-led study group, the celebration of more than one religious feast and separate congregate services.

Plaintiffs ask the court to disregard the affidavit of Mr. Beyah because "he has been known to give false testimony, false information in court, as well as submit fraudulent documentation when required to be truthful" and because the affidavit is self serving.[5] (Pls.' Reply Br. at 4 & 7.) However, as previously noted, credibility determinations are jury functions and are not appropriate for a judge to make in ruling on a motion for summary judgment. Anderson, 477 U.S. at 248. Moreover, as the Court of Appeals for the Seventh Circuit has explained, "so-called 'self-serving affidavit[s]'" are competent to rebut a motion for summary judgment so long as they are based upon the affiant's "personal knowledge." Kaba v. Stepp, 458 F.3d 678, 681 (7th Cir. 2006); see also Wilson v. McRae's, Inc., 413 F.3d 692, 694 (7th Cir. 2005) ("Most affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a [party's] evidence when deciding whether a material dispute requires trial."). Here, Beyah's affidavit was based upon his personal knowledge and therefore can be used as evidence to rebut plaintiffs' declarations at the summary judgment stage.

Thus, disputed facts exist as to whether defendants substantially burdened plaintiffs' practice of religion, and summary judgment on plaintiffs' First Amendment and RLUIPA claims concerning the denial of religious property and various religious practices is not appropriate.

---

[5] Plaintiffs also challenge the affidavits of defendants Beyah and Lemens on the ground that they "contain no official or authentic signature of the Notary Public or that of the persons swearing to the facts in the affidavit." (Pls.' Reply Br. at 8.) This contention is without merit. Both of the affidavits were electronically filed in accordance with the Electronic Case Filing ("ECF") system for this court and included signatures that were in compliance with the signature requirements set forth in the February 15, 2006, Revised Electronic Case Filing Policies and Procedures Manual Civil.

13

### b. Claim Relating to TB Test

Plaintiff Tate claims that defendant Lemens denied him a reasonable alternative to a TB test and instead forcefully injected him with a pork-based TB test. However, contrary to Tate's affidavit, defendant Lemens testified by affidavit that plaintiff was given an alternative to the pork-based injection, which he declined, and that she did not forcefully inject him with a TB test. Lemens' affidavit is made upon her personal knowledge and sufficiently rebuts plaintiff Tate's declaration.

Thus, disputed facts again exist and summary judgment on this claim is not appropriate.

### 2. Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the Equal Protection of the laws." To comply with this mandate, governmental entities are generally required to treat all similarly situated persons in a similar manner. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Plaintiffs who pursue a claim under § 1983 based on a violation of their rights under the Equal Protection Clause must demonstrate that a state actor purposefully discriminated against them because of their identification with a particular (presumably historically disadvantaged) group. Sherwin Manor Nursing Ctr., Inc. v. McAuliffe, 37 F.3d 1216, 1220 (7th Cir 1994).

A plaintiff "'must demonstrate intentional or purposeful discrimination to show an equal protection violation.'" David K. v. Lane, 839 F.2d 1265, 1271 (7th Cir. 1988) (quoting Bloomenthal v. Lavelle, 614 F.2d 1139, 1141 (7th Cir. 1980) (per curiam)). Discriminatory

14

purpose "implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on an identifiable group." David K., 839 F.3d at 1271-1272 (citing Shango v. Jurich, 681 F.2d 1091, 1104 (7th Cir. 1982)); see also Schroeder v. Hamilton Sch. Dist., 282 F.3d 946 (7th Cir. 2002). Negligence on the defendants' part will not suffice to meet the "discriminatory purpose" requirement. Schroeder, 282 F.3d at 951.

> Plaintiffs argue that the defendants discriminated against them in the following ways:
>
> 1. The defendants in implementing the DOC 309 IMP 6A limited the plaintiff as Sunni Muslims to a black Kufi, prayer rug, and prayer beads while inmates that adhered to the Native American faith were allowed five religious property items and Jewish inmates were allowed a Yarmulke and prayer shawl;
>
> 2. defendants limited plaintiff Abdullah to one feast per year when those who adhere to the Christian faith receive three feasts per year;
>
> 3. defendants denied plaintiff Abdullah separate congregate and study services apart from the Nation of Islam while Catholics and Protestants are allowed to remain separate;
>
> 4. defendants allow inmates to be in positions of leadership over other inmates for non-religious activities with staff supervision but have denied plaintiff Abdullah's request to have inmate led congregate and study services;
>
> 5. defendants limit Muslims to a vegetarian diet or self-selecting menu when inmates of other faiths are provided with a religious diet; and
>
> 6. defendants denied plaintiff Abdullah traditional food items for the 'Eid Feast from an approved vendor but allow other inmates to make special order purchases during the Christmas and Thanksgiving holidays.

(Pls.' Br. in Support at 35-40.)

Defendants have presented evidence that their actions were not intentionally discriminatory but were based on their belief that the requested religious property and religious practices were not necessary in order for plaintiffs to effectively practice their Sunni

15

Muslim faith. As such, plaintiffs have not met their burden of demonstrating that they are entitled to summary judgment on their equal protection claims.

**For the foregoing reasons,**

**IT IS THEREFORE ORDERED** that plaintiffs' "Motion to Accept Plaintiff's Reply Brief as Timely Filed" (Docket #139) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiffs' Motion for Summary Judgment (Docket # 112) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 26 day of February, 2007.

/s_____
LYNN ADELMAN
District Judge